**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

LISA ANDERSON, on behalf of
herself and all others similarly situated

Plaintiffs, Case No.: 1:26-cv-4803

v. Hon. Joan H. Lefkow

Grow Hoss, Inc.,

Defendant

---

# BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Grow Hoss, Inc., by and through its undersigned attorneys, states as follows for its Brief in Support of its Motion to Dismiss:

## INTRODUCTION

This case is not about whether accessibility matters. It does. The Americans with Disabilities Act serves the vital purpose of eliminating genuine barriers that deny individuals with disabilities equal access to goods and services. But that purpose is not advanced by treating every alleged technical deviation from a private accessibility guideline as though it necessarily establishes an actual denial of access.

Plaintiff seeks to invoke the ADA's remedial power through a standardized complaint that describes materially different websites in substantially interchangeable terms. Across numerous actions against unrelated online businesses, Plaintiff repeatedly alleges that each website provides "no meaningful accommodations," makes transactions "impossible," and effectively prevents visually impaired users from purchasing any product. Yet objective testing reflects materially different accessibility characteristics among those websites, while the same categorical narrative appears in each case. The Complaint does not identify the product that Plaintiff attempted to

purchase, merely recites several technical conditions, and does not plausibly describe an individualized failed transaction. Instead, it treats alleged deviations from WCAG 2.2—a private technical framework not adopted as a binding Title III standard for private commercial websites—as equivalent to statutory discrimination.

Requiring Plaintiff to allege and establish an actual, individualized denial of access does not weaken the ADA. It protects the statute's legitimacy by preserving the distinction between genuine exclusion and abstract technical nonconformity. Because Plaintiff has not plausibly alleged Article III standing and has not stated a legally cognizable Title III claim against Grow Hoss's standalone website, the Complaint should be dismissed.

## STATEMENT OF FACTS

**Plaintiff and Her Counsel's Nearly Identical Lawsuits.** Both Plaintiff and her counsel have a well-documented history of filing a high volume of nearly identical ADA website accessibility complaints. These complaints follow a boilerplate template with only minimal customization, typically inserting the website name, the alleged accessibility issues, and the product the Plaintiff purportedly attempted to purchase. In the last eight months alone, Ms. Anderson has filed at least twenty-two ADA website accessibility cases before this Court. Each of the complaints that Ms. Anderson has filed is nearly identical, regardless of the condition of the defendants' websites.

**Plaintiff's Complaint.** Plaintiff Lisa Anderson ("Plaintiff") is a visually impaired individual who alleges that she uses screen reader software to access websites on the Internet. Compl. at ¶ 2. Defendant Grow Hoss, Inc. is a Georgia Corporation that sells garden seeds and supplies exclusively through its website, https://growhoss.com (the "Website"). *Id*. at ¶¶ 4, 14. Defendant does not operate any physical stores.

According to the Complaint, Plaintiff visited Defendant's Website on one occasion in November 2025 with the intent to purchase a product. Compl. ¶ 40. Plaintiff alleges that, while browsing the Website using screen-reader software, she encountered certain features she contends were not fully compatible with her assistive technology. *Id.* She claims that these "access barriers render[ed] the Website inaccessible to, and not independently usable by, blind and visually impaired individuals." *Id.*

Although Plaintiff alleges a generalized interest in "microgreens and home gardening supplies," *id.* at 41, the Complaint does not identify the particular product she allegedly attempted to purchase. Plaintiff does *not* allege that she attempted to contact Defendant regarding her experience, sought assistance with any transaction, or attempted to place an order through any alternative means. Nor does she allege any dates that she returned to the Website after her single visit or that she has attempted any subsequent purchase. Plaintiff instead makes a conclusory allegation that she intends to return to the website "immediately" once it becomes accessible. Compl. ¶ 41. Curiously, across all of Plaintiff's twenty-two complaints before this Court, she has never alleged that she reached out to the merchant for assistance—she instead filed suit.

Plaintiff brings a cause of action for "Violation of the Americans with Disabilities Act ("ADA")," alleging that the Website is a place of public accommodation, that Defendant is subject to Title III of the ADA, and that the Website violates the ADA. Compl. at ¶¶ 57-71.

## LEGAL STANDARD

A Rule 12(b)(1) standing challenge may be either facial or factual. A "facial challenge argues that the plaintiff has not sufficiently '*alleged* a basis of subject matter jurisdiction.'" *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citation omitted) (emphasis in original). "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and

draw all reasonable inferences in favor of the plaintiff." *Id*. However, a "factual challenge contends that 'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient." *Id*. (citation omitted) (emphasis in original). "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id*. "In response to a factual challenge, the plaintiff can no longer rest on the allegations in the complaint but must adduce specific *evidence* to satisfy each of the elements necessary to establish his standing to sue." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (emphasis in original).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). While the Court must accept well-pleaded factual allegations as true, it need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

## ARGUMENT

Plaintiff's Complaint fails at both the jurisdictional and merits stages. She lacks Article III standing because she does not plausibly allege either a concrete, individualized injury or a real and immediate threat of future harm. Even apart from standing, the Complaint fails to state a claim because it treats alleged technical deviations from nonbinding accessibility guidelines as equivalent to discrimination under Title III and assumes that a standalone website is itself a place of public accommodation.

### I. PLAINTIFF LACKS ARTICLE III STANDING

"As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To establish standing, Plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury-in-fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiff has not, and cannot, establish a concrete and particularized injury and therefore cannot establish Article III standing through her boilerplate and conclusory allegations.

Defendant challenges Plaintiff's standing both facially and factually. Facially, the Complaint does not plausibly allege that Plaintiff personally suffered a concrete denial of access or faces a real and immediate threat of future injury. Factually, Defendant submits objective evidence controverting Plaintiff's categorical allegations that the Website provides "no meaningful accommodations." Where a defendant mounts a factual challenge to subject-matter jurisdiction, the Court may consider evidence outside the pleadings, and the plaintiff may not rest on the allegations of the complaint but must establish the jurisdictional facts supporting standing. *See Apex Digit.*, 572 F.3d at 444.

### A. Plaintiff Does Not Plausibly Allege a Concrete and Particularized Injury.

Article III requires Plaintiff to allege a concrete and particularized injury, not merely the existence of website conditions she characterizes as inconsistent with accessibility guidelines. The Complaint repeatedly asserts that the Website is "inaccessible," provides no meaningful accommodations, makes transactions impossible, and prevents blind users from independently purchasing products. Compl. ¶¶ 5, 7, 36–39. But those conclusions do not themselves establish

injury in fact. Plaintiff must plausibly allege what condition she personally encountered and how that condition actually denied her equal access to Defendant's goods or services.

The Complaint's individualized allegations do not match its sweeping characterization of the Website. Anderson alleges that, using her screen reader, she located Grow Hoss online, learned that it sold seeds, live plants, and gardening systems, reviewed customer feedback about Defendant's products, navigated the Website, reached a category page, interacted with "Show Options" controls, and attempted to add a product to her cart. *Id.* ¶ 40. Those allegations may describe difficulties using particular Website features, but they do not plausibly describe the "exclusively visual interface" providing "no meaningful accommodations" alleged elsewhere in the Complaint. *See Id.* ¶ 7.

The disconnect is even more apparent when Paragraph 35 is compared with Anderson's actual transaction narrative. Paragraph 35 alleges a broad array of technical conditions, including improper heading hierarchy, unfocusable interactive elements, inaccessible submenus, improper focus order, ambiguous links, repetitive links, links opening new windows without warning, incorrectly coded controls, and unannounced search suggestions. Yet Paragraph 40 identifies only three conditions that allegedly affected Anderson's November 3 visit: inaccessible submenus, improperly coded "Show Options" controls, and focus failing to move into a cart dialog. *Id.* ¶ 40. The Complaint does not allege that the remaining technical conditions played any role in preventing her alleged purchase.

Even as to those three conditions, the Complaint does not plausibly connect each one to a concrete denial of access. Anderson alleges that inaccessible submenus made navigation more difficult, but not that she was unable to reach the products she sought; indeed, the Complaint alleges that she reached the relevant category page and proceeded further. *Id.* ¶ 40. She alleges that

the "Show Options" controls were announced inaccurately by her screen reader and caused "unclear and misleading information," but does not allege what information she received, what information she needed, or how the condition prevented her from selecting a product. *Id.* And although she alleges that focus did not move into a cart dialog after she attempted to add a product, the Complaint does not identify the product she attempted to purchase, what her screen reader announced, what control she could not reach, or what step in the checkout process became unavailable. *Id.*

Those omissions are particularly significant because Anderson never identifies the specific product she allegedly attempted to buy. She alleges generally that she was searching for "microgreens and home gardening supplies," later describes an interest in "microgreens and seed-growing supplies," and says only that she attempted to add "a product" to her cart. *Id.* ¶¶ 40–41. She does not identify that product, explain what information she lacked about it, or allege why any particular Website condition prevented her from purchasing it.

The relevant question is therefore not whether Plaintiff has identified technical Website conditions that could operate differently under WCAG or another accessibility framework. It is whether she has plausibly alleged that a condition she personally encountered concretely denied her access to Defendant's goods or services. The Complaint's generalized technical allegations, coupled with a transaction narrative that does not identify the product allegedly sought or connect most of those conditions to the failed purchase, do not satisfy that requirement.

**B. Defendant Factually Controverts Plaintiff's Alleged Injury.**

Defendant separately mounts a factual challenge to Plaintiff's standing. In resolving a factual Rule 12(b)(1) challenge, the Court may consider evidence outside the pleadings. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 277 (7th Cir. 2020). The jurisdictional allegations are

not entitled to a presumption of truth, and Plaintiff bears the burden of establishing the facts necessary for standing. *Apex Digit., Inc.*, 572 F.3d at 444. Where the facts place the Court on notice that a jurisdictional allegation "probably is false," the Court must require proof of its truth. *Id.*

*1. Plaintiff's Standardized Pleading Does Not Track the Characteristics of Defendant's Website.*

The absence of individualized facts is particularly significant because Anderson's Complaint follows the same standardized architecture used by her counsel in numerous website-accessibility actions against unrelated businesses. The concern is not the reuse of legal language. It is that allegations purportedly describing a plaintiff's personal interaction with a particular website recur across technologically distinct websites selling fundamentally different products.

That problem is apparent within this Complaint itself. It categorically alleges that Grow Hoss uses an "exclusively visual interface" providing "no meaningful accommodations," that blind users are "essentially prevented from purchasing any items," and that the Website requires mouse-only operation to complete a transaction. *Id.* ¶¶ 7, 36–37. Yet Anderson's own narrative alleges that she located Grow Hoss online, learned about its products, reviewed customer feedback, navigated to a category page, interacted with product-selection controls, and attempted to add a product to her cart. *Id.* ¶ 40.

The standardized nature of the allegations is further illustrated by objective accessibility testing. Defendant evaluated Grow Hoss's Website using the WAVE accessibility-testing extension developed by WebAIM. WAVE analyzes a rendered webpage for automatically detectable accessibility characteristics. It does not determine ADA compliance, does not identify every barrier a screen-reader user might encounter, and is not offered as the governing legal standard. **EXHIBIT 1.** Rather, the results are relevant for a narrower purpose: they provide

objective evidence that websites described through substantially interchangeable complaints are not themselves technologically interchangeable. Grow Hoss received an AIM accessibility score of 9.3 out of 10 on the tested page. *Id.* Yet Plaintiff's Complaint characterizes the Website in absolute terms as providing "no meaningful accommodations" and making independent transactions effectively impossible. Compl. ¶¶ 7, 36–37.

The contrast is significant. Grow Hoss received an AIM accessibility score of 9.3 out of 10 on the tested page. **EXHIBIT 1**. By comparison, French Connection received an AIM score of 7.1 out of 10, with WAVE identifying nine accessibility errors, two contrast errors, and 119 alerts on the tested page. **EXHIBIT 2**. Those results reflect materially different automatically detectable accessibility characteristics. Yet Anderson's complaints characterize both websites in substantially the same absolute terms. In the French Connection action, Anderson alleged that the website contained "significant access barriers" making it "impossible" for blind users to complete a transaction and that the defendant had chosen an "exclusively visual interface" providing "no meaningful accommodations" to screen-reader users. *Anderson v. French Connection Group, Inc.*, No. 1:26-cv-01113, Compl. ¶¶ 5, 7. She likewise alleged that visually impaired users were "essentially prevented from purchasing any items" and that the website required mouse-only operation to complete a transaction. *Id.* ¶¶ 36–37. Anderson makes materially the same allegations here. The Grow Hoss Complaint asserts that the Website contains "significant access barriers," makes transactions "impossible," provides "no meaningful accommodations," and requires the use of a mouse to complete a transaction. Compl. ¶¶ 5, 7, 36–37.

The repetition extends beyond legal conclusions. Both complaints follow the same structure: a generalized catalog of technical accessibility concepts, followed by the same categorical allegations of total inability to transact, and then a short product-specific narrative

purporting to describe Anderson's individual experience. In *French Connection*, Anderson allegedly sought a Whisper Mini Dress and attributed her failed transaction to pop-up windows, inaccessible submenus, and inaccessible size-selection controls. Here, she allegedly sought unspecified "microgreens and home gardening supplies" and attributes her failed transaction to inaccessible submenus, "Show Options" controls, and focus behavior in a cart dialog.

The point is not that a higher WAVE score establishes legal compliance or proves what Anderson experienced on a particular visit. It does not. The point is that websites exhibiting materially different objectively detectable accessibility characteristics are nevertheless described by Plaintiff through substantially interchangeable allegations of total inaccessibility. That disparity undermines the inference that the Complaint reflects an individualized account of Anderson's actual interaction with Grow Hoss rather than application of a standardized pleading template.

Defendant does not offer WAVE to establish that Grow Hoss complied with every accessibility guideline on November 3, 2025. Nor does Defendant contend that a present-day automated scan conclusively establishes what Anderson personally experienced on that date. The evidence instead bears on the credibility and plausibility of the jurisdictional premise underlying Plaintiff's claim: that substantially identical allegations of an individualized denial of access accurately describe her interactions with technologically different websites. Where as here, the facts place the Court on notice that Plaintiff's jurisdictional allegations are "probably false," and the Court must require proof of their truth. *Apex Digit., Inc.*, 572 F.3d at 444.

As Judge Seeger recently observed when addressing materially similar complaints filed by Plaintiff's counsel, the repeated filings can resemble "a glorified copy-and-paste operation" in which a plaintiff "takes the last complaint, adds a sprinkling of facts about the latest defendant, and launches the new case." *Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *2 (N.D.

Ill. Mar. 6, 2026). Anderson's Complaint warrants the same scrutiny. Where jurisdiction depends upon her own concrete interaction with Grow Hoss's Website, standardized factual allegations that do not meaningfully track the characteristics of the particular website provide additional reason to require competent proof of the injury she claims.

## II. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE TITLE III DOES NOT COVER STANDALONE WEBSITES AND WCAG NONCOMPLIANCE IS NOT A STATUTORY VIOLATION.

Even if this Court concludes that Plaintiff has adequately alleged Article III standing, her Complaint independently fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6). Two separate grounds support dismissal on the merits. First, Title III does not apply to standalone commercial websites untethered to a physical place of public accommodation, and Plaintiff's claim depends entirely on that theory. Second, even assuming Title III applies in the website context, Plaintiff's Complaint fails to allege a violation of the statute as written. The Complaint is structured as a WCAG technical audit, not as an allegation that Plaintiff was denied meaningful access to Defendant's goods or services, and WCAG is not the governing legal standard under Title III. Either ground independently warrants dismissal.

### A. The ADA Does Not Apply to Standalone Websites

Defendant preserves its position that Title III does not apply to standalone websites untethered to a physical place of public accommodation and therefore that Plaintiff fails to state a claim to the extent her theory depends on treating the Website itself as a place of public accommodation.

Plaintiff's counsel has previously relied on *Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) for the broad proposition that every website offering goods to the public is itself a place of public

accommodation. But *Morgan* did not so hold. The case concerned an employee retirement plan, not a website or an online retailer, and the Seventh Circuit ultimately held that the plan was not a public accommodation because it was not offered to the public. *Id.* Although the court rejected the argument that a public accommodation must invariably operate at a physical site and observed that the "site of the sale is irrelevant," it did not decide the distinct statutory question presented here: whether a standalone website is itself one of the "places of public accommodation" enumerated in 42 U.S.C. § 12181(7). *Id. Morgan* addressed where discrimination may occur, not whether every seller of publicly available goods qualifies as a statutory public accommodation. Its insurance-policy example assumed a seller otherwise falling within Title III and explained that such a seller could not evade the statute merely because the transaction occurred remotely. It did not hold that the medium through which a transaction occurs independently transforms the seller—or the website—into a "sales establishment" or other enumerated place of public accommodation.

Nor does *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999) resolve the issue. *Doe* included a website in an illustrative list of facilities that could not exclude disabled users, but it involved the terms of insurance policies offered by an insurance company, not the accessibility of a standalone retail website. The Seventh Circuit has therefore used broad language suggesting that Title III is not categorically confined to physical transactions, but it has never held that every commercial website is itself a statutory place of public accommodation.

None of this diminishes the importance of equal access for individuals with disabilities. Ensuring that disabled consumers can obtain goods and services on equal terms is a central purpose of the ADA. But that purpose does not authorize courts to bypass the statute's coverage requirements or impose technical obligations that Congress and the DOJ have not adopted for private websites. Unlike physical facilities subject to Titles II and III and state and local

government websites, private businesses remain subject to general nondiscrimination obligations, with no DOJ regulation prescribing a detailed technical standard for Title III websites.

That distinction counsels against converting *Morgan*'s general observation about remote transactions into a holding that every private commercial website is itself a statutory place of public accommodation. Doing so would not merely ensure equal access; it would expose private website operators to liability under a technical regime that does not tell them which standard governs, which version of WCAG applies, or whether compliance with that standard is sufficient.

The most recent authority within this District has recognized substantial textual difficulties with extending Title III to standalone websites. As one court explained, the ADA repeatedly refers to physical locations such as "an inn, hotel, motel," "a restaurant," and "a motion picture house," while making no reference to websites or internet-based services. *Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *3 (N.D. Ill. Mar. 6, 2026). The court further observed that "[a] website is not a place. You can't physically go there." *Id.* Accordingly, the court concluded that a standalone website does not naturally fall within the statutory definition of a "place of public accommodation." *Id.*

**B. Plaintiff's Complaint Fails to State a Claim Because Alleged WCAG Noncompliance Does Not Establish a Violation of Title III.**

Title III of the ADA requires that disabled individuals receive "full and equal enjoyment" of a public accommodation's goods and services. 42 U.S.C. § 12182(a). It does not require technical perfection measured against evolving private guidelines. The Web Content Accessibility Guidelines ("WCAG") are technical standards developed by a private industry consortium. They have never been enacted by Congress, and the DOJ has never formally promulgated them as binding accessibility standards governing private commercial websites under Title III. When the DOJ did formally adopt WCAG-based requirements in 2024, it did so only for Title II public

entities—state and local governments—expressly declining to extend those requirements to private businesses governed by Title III. *See Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities*, 89 Fed. Reg. 31,320 (Apr. 24, 2024). That deliberate distinction forecloses treating WCAG compliance as the operative legal standard here. Plaintiff's Complaint, however, is structured almost entirely as a WCAG audit without alleging facts plausibly showing that any of these technical issues actually denied her meaningful access to Defendant's goods or services. Bare allegations of WCAG nonconformity, untethered to a showing of actual exclusion from a public accommodation's goods and services, do not state a claim under Title III as written. At minimum, those allegations cannot carry the plausibility weight that *Iqbal* and *Twombly* require.

Defendant preserves for appeal its position that imposing Title III liability based solely on alleged deviation from nonbinding private technical guidance raises substantial fair notice concerns under the Due Process Clause of the Fifth Amendment. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."). The absence of formally promulgated Title III website accessibility standards, combined with the inherently evolving and qualitative nature of WCAG criteria, means that businesses lack clear notice of what the law requires, what constitutes sufficient remediation, and when compliance has been achieved. Plaintiff's theory is analogous to suing fifteen unrelated retail stores because each allegedly contains architectural barriers, using nearly identical complaints, even though the stores have entirely different layouts, and then demanding that each store conform to a privately authored model code that has never been incorporated into the governing law.

The Court need not resolve that constitutional question to dismiss this Complaint on

standing grounds. But the fair-notice concern reinforces why this Court should require plaintiffs in website accessibility cases to allege, at a minimum, that specific barriers caused an actual denial of meaningful access to goods or services—not merely that a website failed to conform to technical criteria found nowhere in the governing statute or its implementing regulations.

**CONCLUSION**

For the reasons stated, Defendant Grow Hoss respectfully requests this Court dismiss the Complaint without prejudice under Rule 12(b)(1) for lack of subject-matter jurisdiction or, alternatively, dismiss the Complaint with prejudice under Rule 12(b)(6) and grant such other and further relief as this Court deems just and proper.

Dated: August 31, 2026

/s/John Di Giacomo
John Di Giacomo
Amanda Igra
Revision Legal, PLLC
444 Cass Street, Suite D
Traverse City, MI 49684
john@revisionlegal.com
amanda.igra@revisionlegal.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date below, the foregoing Brief in Support of Motion to Dismiss was filed with the Court via the Court's ECF system

Dated: August 31, 2026

/s/John Di Giacomo
John Di Giacomo
Amanda Igra
Revision Legal, PLLC
444 Cass Street, Suite D
Traverse City, MI 49684
john@revisionlegal.com
amanda.igra@revisionlegal.com